**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

**JULIE REYNOLDS,**

    Plaintiff,

v.

**CHERRY HILLS COUNTRY CLUB,**

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Julie Reynolds, by and through undersigned counsel, files this Complaint against Cherry Hills Country Club (herein "CHCC" or "Defendant").

## I.    JURISDICTION AND VENUE

1.    Jurisdiction is proper in this Court pursuant to the Age Discrimination in Employment Act of 1967 (ADEA,), as amended, 29 U.S.C. 14 § 621 et seq., and 28 U.S.C. §§ 1331 and 1343.

2.    Venue is proper pursuant to 28 U.S.C. §1391(b), as the unlawful employment practices alleged herein were committed within the District of Colorado.

3.    Plaintiff has complied with all jurisdictional, administrative, and legal prerequisites to filing this action, and has received her Notice of Right to Sue from the EEOC.

## II.     ADMINISTRATIVE PREREQUISITES

4.      Ms. Reynolds filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant CHCC (Charge No. 541-2018-00782) on December 29, 2017 alleging discrimination on the basis of age.

5.      The EEOC issued a "Notice of Right to Sue" on September 14, 2020.

6.      This action has been timely commenced within ninety (90) days of Ms. Reynold's receipt of the "Notice of Right to Sue."

7.      Ms. Reynolds has complied with all jurisdictional, administrative, and judicial prerequisites prior to filing this action.

## III.     PARTIES

8.      Ms. Reynolds is a citizen of the United States and a resident of the State of Colorado. She was born on February 9, 1954, and at the time of her termination from employment, Ms. Reynolds was 63 years old.

9.      Cherry Hills Country Club is a for-profit corporation that is authorized to do business in Colorado.  Their principal office is located at 4125 S University Blvd, Cherry Hills Village, CO 80113.

## IV.     FACTUAL ALLEGATIONS

10.       Ms. Reynolds worked for Defendant, Cherry Hills Country Club, for 16 years.

11.      During her tenure with Defendant, Ms. Reynolds served in various roles and most recently served as a hostess for the last 5 years of her employment.

12.       In November 2015, Defendant hired Mr. Evan Kaplan as its Director of Food and Beverage, and he became Ms. Reynolds' manager.

13.      In Ms. Reynolds' January 2016 annual review, she received an "excellent" rating, but Mr. Kaplan included in the review comments about Ms. Reynolds' appearance.

14.      In February 2016, Mr. Kaplan altered Ms. Reynolds' job description without explanation.

   a.   Mr. Kaplan removed Ms. Reynolds from the position of hostess, taking away her regularly scheduled shifts.

   b.   Ms. Reynolds was assigned the newly created bridge attendant position where she assisted club members while they played bridge.

15.      However, because members' interest to play bridge decreases at the end of summer, Ms. Reynolds was concerned that she would not be able to work after the summer.

16.      Ms. Reynolds expressed her concern to Mr. Kaplan and requested that she be returned to her hostess position in the fall and winter months.

17.      On or around April 15, 2016, Mr. Kaplan called Ms. Reynolds into his office for a one-on-one meeting.

   a.   During this meeting, Mr. Kaplan accused Ms. Reynolds of inappropriate conduct against fellow hostesses.

   b.   Mr. Kaplan also alleged that two young women quit because of Ms. Reynolds' behavior.

   c.   Additionally, Mr. Kaplan stated that Ms. Reynolds was a "strong woman" and "needed to tone it down."

18.      After the meeting, Ms. Reynolds contacted the two former employees to apologize for any offensive actions.

19.     Both of the former employees stated that Ms. Reynolds had not contributed to their decisions to leave employment with the Defendant.

20.     The former employees also assured Ms. Reynolds that they enjoyed working with her, contrary to Mr. Kaplan's allegations.

21.     Though Ms. Reynolds was relieved that she was not perceived as a bully in the workplace, she became increasingly concerned about Mr. Kaplan's tendency to make unfounded accusations against her.

22.      Mr. Kaplan encouraged other supervisors to document critical and negative statements about Ms. Reynolds in the CHCC internal database.

23.     There is no indication that other similarly situated employees were targeted by Mr. Kaplan in this manner.

24.     On or about April 23, 2016, Ms. Reynolds noticed that Mr. Kaplan had taken her off two shifts for the upcoming week, although he did not discuss any shift changes with her.

25.     Ms. Reynolds did not understand the reason for her changed schedule and worried about her decreased hours.

26.     The next day, Ms. Reynolds approached Mr. Kaplan regarding her two missing shifts.

27.     Mr. Kaplan became defensive, accusing Ms. Reynolds of standing at the hostess station with her hands down her pants.

28.     Exasperated by Mr. Kaplan's false accusations, Ms. Reynolds informed him of the telephone calls with her former coworkers.

29.     Although no policy prohibited communications with former employees, this information visibly angered Mr. Kaplan, and he ordered Ms. Reynolds into his office immediately.

30.     Once in his office, Mr. Kaplan criticized and humiliated Ms. Reynolds, accusing her of being unprofessional and told her that she may want to think about "doing something else."

31.     On or about April 24, 2016, Ms. Reynolds raised the issue of her missing shifts, Mr. Kaplan informed Ms. Reynolds that she was being placed on unpaid leave for two weeks so that she could "figure it out".

32.     Ms. Reynolds was not permitted to ask questions, nor was she given a clear reason for his sudden decision to place her on unpaid leave.

33.     The CHCC employee handbook states that an employee may be suspended without pay while an investigation is conducted, however there is no indication that any investigation was conducted by the Defendant.

34.     On or around August 2, 2016, Mr. Kaplan asked Ms. Reynolds to attend a meeting with Human Resources.

35.     During this meeting, Defendant informed Ms. Reynolds that her bridge attendant position was eliminated and offered her a part-time hostess position.

36.     Defendant denied Ms. Reynolds' request to return full-time as a hostess.

37.     Mr. Kaplan also denied Ms. Reynolds' request to transfer into an open server position.

38.     Mr. Kaplan prohibited Ms. Reynolds from working additional shifts, while simultaneously actively offering and regularly approving extra shifts for younger employees.

39.     On her next schedule, Ms. Reynolds was only scheduled to work 22 hours.

40.     Defendant's company policies require that an employee average 32 working hours a week, in order to maintain full-time employee status.

41.     The loss of full-time employee status would cause Ms. Reynolds to lose her employee benefits.

42.     On or around September 2016, Mr. Kaplan insisted that Ms. Reynolds be written up after she clocked in late (although she was physically present at work on time).

43.     Mr. Kaplan demanded that Ms. Reynolds leave work immediately if she refused to sign any written warnings.

44.     Younger female employees were not disciplined for clocking in late.

45.     On March 7, 2017, Mr. Kaplan and Monica Mueller, Human Resources Director, requested a meeting with Ms. Reynolds.

46.     In this meeting, Ms. Reynolds was informed of her immediate termination, allegedly for placing incorrect menu pages in a small stack of menus, seating members too quickly, and placing one incorrect appetizer order during a busy March 3, 2017 shift.

47.     Upon information and belief, no employees have ever been terminated for the same or similar reasons.

48.     Sworn statements of other employees, which were provided to CHCC, state that Ms. Reynolds was targeted by Mr. Kaplan and treated differently than younger employees.

49.     Upon information and belief, Mr. Kaplan was terminated by the Defendant on or around October 2017.

50.     Defendant fully supported Mr. Kaplan's actions during the term of his employment, including his discriminatory actions against Ms. Reynolds.

51.      Ms. Reynolds was 63 years old when she was terminated from her position with Defendant.

52.     Ms. Reynolds was subjected to a hostile work environment because of her age by Mr. Kaplan.

## FIRST CLAIM FOR RELIEF
### Violation of the Age Discrimination in Employment Act of 1967, as amended,
### 29  U.S.C. 14 § 621, *et seq*.

53.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

54.     Ms. Reynolds is over the age of 40 years old.

55.     Ms. Reynolds performed her job well and was very knowledgeable and helpful to other employees because she had worked for Defendant for many years.

56.     Ms. Reynolds was extremely well-liked and trusted by club members.

57.     Despite her dedication and good work as a hostess and as a bridge attendant, Defendant reassigned Ms. Reynolds to different roles where she was less apt to succeed.

58.     Defendant subjected Ms. Reynolds to adverse treatment in the terms and conditions of her employment because of her age, including but not limited to the discriminatory terms and conditions of her employment and her termination.

59.     Defendant's actions toward Ms. Reynolds were done knowingly and willfully, justifying an award of liquidated damages.

60.     As a result of Defendant's unlawful employment practices, Ms. Reynolds has suffered and continues to suffer loss of pay, salary and benefits, loss of job, loss of career opportunities, and related injuries of a similar nature.

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests that this Honorable

Court enter a judgement for the Plaintiff as follows:

      a.  Back pay, benefits, and other economic losses;

      b.  Reinstatement or front pay and benefits in lieu thereof;

      c.  Liquidated damages doubling the award of interest, wages, lost employment

          benefits, and other compensation lost as a result of the Defendant's unlawful

          discrimination;

      d.  Attorney and expert witness fees, expenses and costs;

      e.  Pre- and post-judgment interest at the highest lawful rate; and

      f.  Any such further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 10th day of December, 2020.

                            */s/ Rachel E. Ellis*
                            Rachel E. Ellis
                            Euell B. Thomas
                            LIVELIHOOD LAW, LLC
                            3401 Quebec Street, Suite 6009
                            Denver, CO 80207
                            Telephone: 720-465-6972
                            Email: ree@livelihoodlaw.com
                                      ebt@livelihoodlaw.com